FILED
05/23/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2024

**STATE OF TENNESSEE v. DEONDRE RAYMON MCCLAIN**

**Appeal from the Circuit Court for Maury County**
**No. 27573    J. Russell Parkes, Judge**

_____

**No. M2023-00761-CCA-R3-CD**

_____

The Defendant, Deondre Raymon McClain, appeals the trial court's revocation of his effective six-year probationary sentence stemming from his guilty-pleaded convictions for unlawful possession of a weapon by a convicted felon and possession of a Schedule VI controlled substance with the intent to sell.  On appeal, he argues that the trial court's findings were insufficient to support its decision to fully revoke his probation and order him to serve the remainder of his sentence in confinement.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

Mitchell A. Raines, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal), Franklin, Tennessee; Travis B. Jones, District Public Defender; and Robert R. Wagonschutz, Assistant District Public Defender (at revocation hearing), Columbia, Tennessee, for the appellant, Deondre Raymon McClain.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Ross M. Boudreaux, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.     FACTUAL AND PROCEDURAL HISTORY**

## A. Guilty Plea

In July 2019, the Maury County Grand Jury indicted the Defendant for unlawful possession of a weapon by a convicted felon and possession of a Schedule VI controlled substance, to wit: "a non leafy, resinous material containing tetrahyd[]rocannabinol (BHO liquid)," with the intent to sell. *See* Tenn. Code Ann. §§ 39-17-417, -1307(b)(1)(A). Both offenses were alleged to have occurred on December 14, 2018. Ten days after his indictment, the Defendant pleaded guilty to both counts as charged.[1] In return, the Defendant received a Range I, standard offender sentence of four years for the weapon conviction, all suspended to supervised probation. For the drug conviction, the Defendant received a Range I, standard offender two-year sentence, which required service of one-year in jail followed by a supervised probationary period of two years. The two sentences were to run consecutively, for a total effective sentence of six years' supervised probation following the service of one year. The Defendant was given credit for pretrial time served.

## B. Probation Revocation Proceedings

On January 29, 2021, the Defendant's probation officer, Darby Tompkins, filed a probation violation affidavit seeking a warrant for the Defendant's arrest ("original warrant"). It was alleged in the affidavit that the Defendant violated Rule 1 of his probation by failing to obey the law and Rule 8 by possessing illegal drugs. Specifically, Officer Tompkins claimed that the Franklin Police Department arrested the Defendant on January 2, 2021, for evading arrest, possession of Schedule VI drugs with the intent to sell or deliver, driving on a revoked license, and possession of drug paraphernalia. Based upon the affidavit, the trial court signed a warrant that same day for the Defendant's arrest, which was executed on August 17, 2022.

Then, on September 2, 2022, the Defendant's probation officer, Monique Wells, filed a violation of probation affidavit titled, "1st Amended 1st violation." Officer Wells stated in the affidavit that the Defendant had again violated Rule 1 of his probation by failing to obey the law. In the violation information section, the boxes "criminal" and "new class A misdemeanor arrest/charge" were checked. Specifically, it was provided in the affidavit that on August 13, 2022, the Defendant was arrested in Williamson County for two counts of failure to appear. The "violation dates" for these charges were listed as April 20, 2021, in Williamson County General Sessions ("WCGS") case number 2020-CR-4431 and June 29, 2021, in WCGS case number 2021-CR-0445. That same day, the trial court

---

[1] Neither the guilty plea hearing transcript nor the guilty plea paperwork is included in the appellate record.

signed a warrant for the Defendant's arrest based upon the information contained in the affidavit. The warrant reflects an execution date of August 2, 2022.[2]

Probation Officer Anthony Montgomery issued another violation of probation affidavit on November 7, 2022, which "amended" the original warrant. Officer Montgomery stated in the affidavit that the Defendant had again violated Rule 8 of his probation by using or having in his possession illegal drugs. In the violation information section, the boxes "zero tolerance" and "graduated zero tolerance violation" were checked. Specifically, the affidavit provided that the Defendant was administered a drug screen on October 24, 2022, and that he tested positive "for THC, confirmed positive by Abbott labs at 28 ng/ml." The trial court signed the violation warrant on November 8. The warrant does not reflect an execution date.

On December 19, 2022, Officer Montgomery issued another probation violation affidavit against the Defendant, which was titled, "2nd amended." Again, Officer Montgomery indicated that the Defendant had violated Rule 8 of his probation by using or having in his possession illegal drugs, and the boxes "zero tolerance" and "graduated zero tolerance violation" were checked. This time it was alleged that the Defendant was administered a drug screen on December 5, 2022, and that he tested positive "for THC, confirmed positive by Abbott labs at 598 ng/ml." The trial court signed the violation warrant on December 21, 2022. It bears an execution date of February 12, 2023.

Finally, on February 21, 2023, Officer Montgomery issued a "3rd amended" violation of probation affidavit against the Defendant. In the violation information section, the boxes "criminal" and "new class A misdemeanor arrest/charge" were checked. First, Officer Montgomery stated that the Defendant had violated Rule 1 of his probation by failing to obey the law and Rule 14 by behaving in a manner that poses a threat to others or himself. Specifically, it was alleged that the Columbia Police Department arrested the Defendant on February 12, 2023, for evading arrest and criminal impersonation. Officer Montgomery also indicated in the affidavit that the Defendant was in violation of Rule 6 by failing to report on January 3, 2023, as previously instructed and Rule 9 by failing to pay all required supervision fees, having an outstanding balance of $287.45. Based upon the affidavit, the trial court signed a warrant for the Defendant's arrest that same day, and the warrant was executed on February 22, 2023.

The trial court held a probation revocation hearing on April 6, 2023. The State entered as a collective exhibit certain documents concerning the Defendant's other arrests and cases that were listed in the various probation violation affidavits and warrants.

---

[2] This can only be a clerical error given that the warrant had not been issued at that time.

The first set of documents related to the Defendant's arrest on February 12, 2023, for evading arrest and his being charged later that day for criminal impersonation—Maury County General Sessions ("MCGS") case number 23-CR-272. Those documents included: (1) a certified copy of the Defendant's February 21, 2023 guilty-pleaded conviction for evading arrest in count 1, with service of 120 days; (2) a February 12, 2023 MCGS arrest warrant for the Defendant's evading arrest charge, wherein the affiant officer stated that the "Defendant did flee on foot from uniformed law enforcement officers after being informed by said officers that he was under arrest for having two active warrants[—]MCSD case #2023-C-00671"; (3) another February 12, 2023 MCGS arrest warrant charging the Defendant with criminal impersonation, wherein the affiant officer stated that the Defendant impersonated another individual during a traffic stop and that the Defendant's identity was later discovered at the jail; (4) and a "Waivers for Trial in General Session Court" document reflecting that when the Defendant entered his guilty plea to evading arrest in count 1 on February 21, 2023, the criminal impersonation charge, count 2, was "nolle[d.]" The next set of documents was an affidavit of complaint, an arrest warrant, and a capias bench warrant in WCGS case number 2021-CR-0445 for failure to appear on charges of "SCH VI DRUG, DRUG PARA, EVADING ARREST, DOS." The affiant court officer stated that the Defendant, having been duly ordered to appear on June 29, 2021, failed to do so. There is no officer's return indicated on these documents. The last set of documents, an affidavit of complaint and arrest warrant concerned WCGS case number 2020-CR-4431, wherein the Defendant was charged with failure to appear. The affiant court officer stated that the Defendant, having been duly ordered to appear on April 20, 2021, failed to do so. The warrant reflects a return of August 13, 2022.

The Defendant's probation officer Anthony Montgomery testified that he was responsible for supervising the Defendant. Officer Montgomery recounted the Defendant's history while on probation and detailed the information in the various probation violation affidavits and warrants. According to Officer Montgomery, the Defendant was supervised "at an enhanced level" because he "scored high for violence," requiring the Defendant to report twice a month in office and complete one home visit per month.

During Officer Montgomery's testimony regarding the Defendant's two positive drug screens referenced in the warrants, it was noted that the trial court was unable to find any supporting affidavit from the lab certifying the results of the drug test performed on October 24, 2022. *See* Tenn. Code Ann. § 40-35-311(c). Relative to the December 5, 2022 drug test, the trial court, upon the request of the prosecutor, took judicial notice of the "January 26th, 2023, filing with an affidavit pursuant to 40-35-311 of the certification from

- 4 -

Abbott Laboratories of a positive drug screen, positive for marijuana[.]" *See* Tenn. R. Evid. 201.

On cross-examination, Officer Montgomery agreed that he was able to conduct home visits with the Defendant "[u]p until" the final violation warrant was issued. Officer Montgomery also agreed that the Defendant, having been on probation since July 2019, would have made some payments towards his supervision fees.

Next, Franklin Police Department ("FPD") Officer Cody Travis provided additional information about the Defendant's arrest on January 2, 2021. On that date, around 3:30 p.m., Officer Travis was patrolling the Cool Springs Galleria mall in his unmarked patrol car when he noticed the Defendant driving at a slow rate of speed and "looking all around" the parking lot. According to Officer Travis, the Defendant focused on a mall security officer, who was in the parking lot helping another individual, "more than a normal person would." Officer Travis thought that the Defendant's behavior was suspicious and that he might be shoplifting, so after the Defendant parked his silver SUV, Officer Travis parked behind the Defendant and asked mall security to observe the Defendant's movements while the Defendant was inside the mall. Officer Travis and his partner, who were in "plain clothes," got out of their patrol car and put on their vests identifying them as police officers. Officer Travis's partner went to examine the SUV and smelled the odor of marijuana coming from the vehicle and saw "shake" on the driver's seat. They awaited the Defendant's return.

Officer Travis watched as the Defendant exited the shopping mall "staggering" to his vehicle with shopping bags in both of his hands. When Officer Travis's partner said to the Defendant, "I need to talk to you[,]" the Defendant dropped the shopping bags and fled on foot in the direction of Interstate 65. Both officers gave chase, but ultimately lost sight of the Defendant, and Officer Travis radioed the information to dispatch.

FPD Officer Alan Yates testified that he was involved with the search for the Defendant. After receiving the call, Officer Yates began searching on the opposite side of the interstate from the mall and, around 4:26 p.m., saw a subject matching the Defendant's description. According to Officer Yates, when the Defendant saw his patrol car, the Defendant changed direction and headed into a "woodline." Officer Yates got out of his patrol car, taser in hand, and commanded the Defendant "to give up and surrender." Though the Defendant began to comply, he became stuck in some bushes and unable to free himself, which he relayed to Officer Yates. Officer Yates assisted the Defendant in freeing himself before transporting the Defendant back to the mall parking lot where the other officers were located.

Officer Travis determined that the Defendant's driver's license was suspended and that the Defendant's SUV was a rental. A subsequent search of the SUV yielded 170.7 grams of a green, leafy substance inside several individual bags—there was one larger bag, and four or five smaller bags "still packaged." Officers also located a glass pipe, additional individual bags, and a miniature scale inside of the vehicle. In addition, during a search of the Defendant's flight path from the mall, officers found the Defendant's sweatshirt that contained $1,802 dollars cash. Officer Travis opined that, consistent with his experience, the substance found inside the Defendant's vehicle was marijuana. Further, in Officer Travis's training and experience, individual bags of that quantity of marijuana, along with drug paraphernalia and cash, were indicative of future drug sales.

The Defendant chose not to testify given that he had charges still pending. Defense counsel argued that the State presented "no proof . . . to confirm this was marijuana." The trial court stated, "There's not? . . . . [The Defendant] ran. There were scales in the car. They've identified it as shake. There's 170 grams of a green, leafy substance which this officer said was marijuana." Defense counsel noted that Officer Travis said he was unable to distinguish between hemp and marijuana, to which the trial court replied, "You're not gonna win that argument in front of me today, but go on to the next one." Defense counsel then said, "The rest we will submit to the [c]ourt."

Thereafter, the trial court issued its ruling. First, the trial court reviewed the allegations contained in the various probation violation affidavits and warrants. Relative to the original warrant, the trial court noted the officers' testimony surrounding the Defendant's behavior at the Cool Springs Galleria on January 2, 2021—specifically, that the Defendant was driving slowly, frequently looked at mall security, fled when asked to stop, and had a green, leafy substance and paraphernalia inside his car. The trial court determined that the Defendant was in violation of both Rules 1 and 8 of his probation given that the State had proven the charges of evading arrest and possession of marijuana with the intent to sell or deliver by a preponderance of the evidence.

Relative to the first amended warrant issued on September 2, 2022, the trial court determined based upon the documents submitted that the State had proven by a preponderance of the evidence a violation of Rule 1, in that the Defendant had twice failed to appear in WCGS court. The trial court observed that the Defendant had failed to appear before it as well.

Relative to the next amended warrant issued November 8, 2022, the trial court determined that the State had not carried its burden as to lab confirmation of the

Defendant's positive drug screen on October 24, 2022. Thus, no violation of Rule 8 occurred. Regarding the December 21, 2022 amended warrant, the trial court determined that the State had carried its burden by a preponderance of the evidence that the Defendant tested positive for THC on December 5, 2022, such being certified by affidavit from Abbott Laboratories. Accordingly, the Defendant violated Rule 8 on this occasion.

As for the February 21, 2023 amended warrant, the trial court found that the State had proven by a preponderance of the evidence the Defendant's MCGS charges for evading arrest and criminal impersonation taking place on February 12, 2023. The trial court noted the Defendant's MCGS guilty plea to evading arrest in that matter as evidenced by the State's entry of the judgment form.

The trial court then made the following findings with regard to the consequences of the Defendant's probation violations:

> The question is, what do I do with him? If he was here for one violation, one positive drug screen, I wouldn't even see it. He has consistently—after having been served with warrants, knowing that he's on probation, knowing that he's subject to a hearing, constantly and consistently violated the rules of probation, been arrested, prosecuted, entered pleas. Then just within a matter of months to yet again violate the law.
>
> I find that the only—maybe not the only available sanction but the most appropriate sanction for this defendant is a full revocation of the full six-year sentence. He will serve it in the Tennessee Department of Correction[].

The trial court entered an order to that effect, fully revoking the Defendant's probation and giving him credit for time served. The Defendant filed an untimely notice of appeal, but in a previous order, this court granted a waiver of the notice of appeal document in the interest of justice. *See* Tenn. R. App. P. 4(a). The case is now before us for our review.

## II.    ANALYSIS

On appeal, the Defendant argues that the trial court erred because it "placed no meaningful findings or reasons on the record to support its decision to fully revoke" the remainder of his six-year probationary sentence. Accordingly, the Defendant contends that the trial court failed to complete the second step of the analysis required by *State v. Dagnan*,

641 S.W.3d 751, 757 (Tenn. 2022), in determining the appropriate consequences upon revocation, and he asks this court to reverse and remand for a new hearing with sufficient findings. The State responds that "the trial court carefully considered the nature of the [D]efendant's probation violations before" revoking the Defendant's probation in full and that this court should affirm accordingly.

Appellate courts review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). If a trial court fails to state its findings and reasoning for the revocation on the record, appellate courts may conduct a de novo review if the record is sufficiently developed, or the appellate court may remand the case for the trial court to make such findings. *Dagnan*, 641 S.W.3d at 759 (citing *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)).

Probation revocation is a two-step consideration requiring trial courts to make two distinct determinations as to (1) whether to revoke probation and (2) what consequences will apply upon revocation. *Dagnan*, 641 S.W.3d at 757. No additional hearing is required for trial courts to determine the proper consequences for a revocation. *Id.* The trial court's findings do not need to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* at 759 (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2021)).

"The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." Tenn. Code Ann. § 40-35-311(d)(1). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." *Id*. Notwithstanding subdivision (d)(1), the probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both. *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022).

The following are classified as non-technical violations: a defendant's commission of a new felony or a new Class A misdemeanor, a zero tolerance violation as defined by

the department of correction community supervision matrix, absconding, or contacting the defendant's victim in violation of a condition of probation. Tenn. Code Ann. § 40-35-311(e)(2). Once a trial court determines that a defendant has committed a non-technical violation of probation, the trial court may: (1) order confinement for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for the remainder of the unexpired term to a sentence of probation. *See id.* §§ 40-35-308(c), -310, -311(e)(2).

On appeal, the trial court's application of the first step of *Dagnan* is not in dispute. The trial court found that the Defendant had violated the terms of his probation repeatedly by his commission of new offenses and a zero-tolerance violation. In order to establish a violation of a suspended sentence based on the commission of a new offense, the State must offer proof by a preponderance of the evidence showing that a defendant violated the law. *See State v. Vaughn*, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App. June 14, 2010) (noting that proof of a conviction is not necessary). However, the State "must present sufficient facts at the revocation hearing to enable the trial court to 'make a conscientious and intelligent judgment as to whether the conduct in question violated the law.'" *State v. Holley*, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *4 (Tenn. Crim. App. Oct. 25, 2005) (quoting *State v. Harkins*, 811 S.W.2d 79, 83 n.3 (Tenn. 1991)).

Specifically, the trial court determined that the Defendant had committed multiple non-technical violations—he had evaded arrest and possessed marijuana based upon the events that took place at the Cool Springs Galleria on January 2, 2021; he had failed to appear in WCGS court on two occasions; he had possessed and used drugs on December 5, 2022, as evidenced by his certified positive drug screen; and he had committed the offense of evading arrest on February 12, 2023, as reflected by his guilty plea. The record supports the trial court's findings. Due to the non-technical nature of the violations, the trial court was statutorily authorized to order the Defendant to serve the remainder of his sentence in incarceration. *See* Tenn. Code Ann. § 40-35-311(e)(2).

Turning our attention to the trial court's reasoning for ordering incarceration as a consequence of revocation, the second step of *Dagnan*, the Defendant argues that the trial court failed to consider "whether the act of ordering execution of the original sentence would serve the ends of justice and be in the best interests of both [the Defendant] and the public." In issuing its ruling, the trial court noted that after finding the violations occurred, it was tasked with determining the consequence for the violations. The trial court first remarked that full revocation would not be warranted if the Defendant were in court merely

for one failed drug test. However, as the trial court observed, the Defendant had been charged with multiple violations, and the Defendant, after service of those warrants, continued to "constantly and consistently violate[] the rules of probation" despite knowing he remained on probation and was subject to a probation violation hearing. The trial court then noted that the Defendant had "been arrested, prosecuted, [and] entered pleas[,]" but would violate the law again within a matter of months. The trial court determined that full revocation was "the most appropriate sanction" for the Defendant.

As noted above, the trial court's findings do not need to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Dagnan*, 641 S.W.3d. at 759 (citing *Bise*, 380 S.W.3d at 705-06). To impose the Defendant's proposed standards would go beyond the requirements of *Dagnan* and necessitate a trial court include specific phraseology in its ruling about the ends of justice and the needs of both the public and the Defendant, which we will not do. *See, e.g.*, *State v. Doxtater*, No. E2023-00261-CCA-R3-CD, 2023 WL 8319200, at *6 (Tenn. Crim. App. Dec. 1, 2023) (rejecting the defendant's argument "that the trial court failed to consider whether execution of the original sentence would serve the ends of justice and be in the best interests of the [d]efendant, his three children, or the public"), *no perm. app. filed*.

Moreover, a trial court may, in determining the appropriate consequence for a probation violation, consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d. at 759 n.5. The facts recited by the trial court relative to the number of violations and the Defendant's criminal history indicate that measures less restrictive than confinement were unsuccessful for the Defendant and reflect poorly on the Defendant's potential for rehabilitation. *See* Tenn. Code Ann. § 40-35-103(1)(C), (5).

The record in the present case reflects that the trial court appropriately analyzed the evidence and made sufficient, though not particularly elaborate, findings regarding the facts and circumstances as they informed its decision concerning the appropriate consequence for the violations. Accordingly, the trial court acted within its discretion when it ruled that the Defendant was no longer a good candidate for probation and should serve the remainder of his effective six-year probationary sentence incarcerated. *See, e.g., State v. Nelson*, No. M2023-00311-CCA-R3-CD, 2023 WL 6843541, at *5 (Tenn. Crim. App. Oct. 17, 2023) (affirming a trial court's decision to revoke probation in full after it had considered the defendant's past criminal history, which included his multiple violations of a past probationary sentence and his previous failed attempts at drug treatment), *perm. app. denied* (Tenn. Mar. 6, 2024); *State v. McDonell*, No. E2022-00898-CCA-R3-CD, 2023 WL

5316711, at \*3 (Tenn. Crim. App. Aug. 18, 2023) (finding that although the trial court did not expressly mention a "two-step" process or use the "separate exercise of discretion language" set forth in *Dagnan*, the trial court's findings, albeit brief, suggested that the trial court considered the consequences for the violation as a separate discretionary decision), *perm. app. denied* (Tenn. Dec. 20, 2023).

### III.   CONCLUSION

Accordingly, the Defendant is not entitled to relief, and the judgment of the trial court is affirmed.

_____
KYLE A. HIXSON, JUDGE